Good morning, Your Honor. May it please the Court, Boris Schoenberg, on behalf of the petitioner, appellant, Francisco Aldana-Cano, I'd like to reserve three minutes for rebuttal. We'll try to help you, but keep an eye on the clock, if you will. I will. Your Honor, in this case, two immigration judges reopened and terminated Mr. Aldana-Cano's 1989 asylum grant for his pre-Erira conviction of a California Penal Code 288A, a conviction that both judges found to be a majority serious crime, and the Board affirmed and declined to disturb those decisions. The judges and the Board of Immigration Appeals said that it didn't matter whether the Immigration and Nationality Act allowed them to revoke Mr. Aldana-Cano's asylum grant for a pre-Erira conviction, because federal immigration regulations in 1989, in 1993, and in 2011 allowed them to terminate asylum status for a conviction for a particularly serious crime. The problem is that the regulations could not permit what the statute did not allow. Section 208, as of the date of Mr. Aldana-Cano's 1993 conviction, allowed for denial but not termination of asylum status for a non-citizen who was convicted of a particularly serious crime. Section 208C to B, added by Erira, authorized the Attorney General and his delegates to terminate asylum status for that reason, for a conviction for a particularly serious crime, but only after asylum application was filed on or after April 1, 1997, not in 1989 when Mr. Aldana-Cano sought and received asylum in this case. The Immigration Judge's decision to terminate Mr. Aldana-Cano's asylum status without lawful authority conferred by Congress alone justifies vacating the decisions of the Board of Immigration Appeals and the Immigration Judges to reopen and terminate his deportation proceedings based upon the then-existing 1993 regulations, and compels a decision by this Court ordering the reinstatement. Let me be sure I understand your position. As I understand it, the Erira didn't apply here. They didn't try to apply that. They were applying the pre-existing law. Do you agree with that? Well, Your Honor, what happened is the government moved to reopen the 1989 asylum grant and claimed that a violation of 288A was an aggravated felony conviction. That justified termination of his asylum grant. I argued that the provisions of the INA concerning termination of asylum for a particularly serious crime could not apply retroactively to him, Mr. Aldana-Cano. But with respect, I thought we were talking about Erira, which is different, and that one they did not, if I understand it correctly, the Board did not try to apply that retroactively. As I understand it, we're dealing with pre-Erira law and whether or not this was a particularly serious crime under pre-existing law. Is that correct? Well, Your Honor, actually, the Board affirmed the prior decisions of the immigration judges, which applied not the Immigration and Nationality Act pre-Erira, but they actually applied pre-existing federal regulations that authorized the termination of asylum status if an applicant, if an asylee committed crimes which would have justified a denial of asylum in the first instance. So what's the problem with that? If you were saying that they applied Erira, that's a different issue. But here they didn't. The regulation that you cite seems to permit exactly what they did. Why is that wrong? Well, it's wrong because the statute in 1993, and in fact the immigration judge was applying the 1993 regulation, the statute did not authorize the termination of asylum status for a conviction of a particularly serious crime. It authorized termination of asylum status when an alien or an asylee in this circumstance no longer had a well-founded fear of future persecution on account of race, religion, nationality, political opinion, or their membership in a particular social group. But there was no specific provision pertaining to termination of asylum status for a conviction of a particularly serious crime. Since that statutory authority didn't exist, the regulation basically allowed the immigration authorities to do something that they didn't have legal authority to do. So your complaint is that the regulation which does permit termination was itself illicit because it had no statutory backing. Is that correct? Is there any case law that you can cite us to that would, if you will, buttress your argument to that effect? Sure, sure. Well, you know, there isn't any case law particular to Section 208C2B of the Immigration and Nationality Act. However, there are a number of cases within the Ninth Circuit that support the idea that when an immigration regulation is ultra-virus to a statute, that that regulation is invalid. And what case would you cite? Well, Schneider v. Chertoff dealt with regulations for the admission of foreign medical graduates. In particular, it was a statute that Congress passed that allowed certain foreign medical graduates to come here and to attain lawful permanent residence status if they agreed to serve for a certain period of time as doctors in an underserved area. It was either three or five years. Federal regulations imposed additional requirements on those foreign nationals that were not imposed under the statute. In particular, a regulation, for instance, that said that if you have to serve as a doctor in an underserved area for five years, you must complete your service as a doctor within a six-year period. And the court in that case said, you know, there's no language in the statute that requires a doctor to serve, you know, that requisite five years for lawful permanent residence status within a particular time. So that regulation is ultra-virus to the statute. Hoyt v. Holder is another case in which this court has found that an immigration regulation was ultra-virus to an authorizing statute. That case concerned Russians to reopen. In addition to the Immigration and Nationality Act, under ERIRA, actually as well, conferred a statutory right upon a non-citizen to file a motion to reopen an immigration case and to rescind an order of removal within 90 days. Let me just, because we're running out of time here. Sure. By my notes, 8 U.S.C. Section 1158B-2 and 1158C-2B permit the I.I.J., in this case, to terminate asylum status, irregardless of ERIRA. What's your response to that? Well, Your Honor, the effective date provisions of ERIRA, which added both of those provisions to the Immigration and Nationality Act, specified that the provisions for the termination of asylum status should only apply to asylum applications filed on or after April 1, 1997. My client's initial asylum application, which was the focus of his asylum grant, was filed in 1989. So, you know, just by the plain language of the statute, that provision for the termination of asylum status should not apply to him. So you're saying that 1158B-2 and 1158C-2B are part of ERIRA and therefore have the same, if you will, retroactivity features? Yes. Yeah. In fact, they were enacted in Section 604A of ERIRA. And I forget what the subpart of ERIRA is. It's a pretty long statute. But they were enacted in the same statutory subsection. And Section 604C of that same subsection said the amendments made in 604A shall only apply to asylum applications on or after April 1, 1997. You know, just a slight bend on this thing. My impression was that your argument on this issue was rather that there was a collateral estoppel, that basically that the IJ couldn't find something different the second time around that had been found in the earlier version, not that there was no right to terminate. Well, that's actually an alternative argument, Mara. You know, the first argument is that the immigration judge in El Centro and also in Los Angeles, which reaffirmed that prior holding, should not have terminated the 1989 asylum grant in the first instance. Because, you know, Section 208C, 2B of the Immigration and Nationality Act was implicitly retroactive. It was applied to him. And the regulations cited by the immigration judge did not authorize anything that the statute did not permit. Assuming that asylum status properly terminated, I did argue alternatively that the immigration judge in Los Angeles committed reversible error by re-adjudicating the facts underlying the 1989 asylum grant for purposes of considering whether the respondent, in this case, from removal and reopened deportation hearings. But if 1159B doesn't apply retroactively, does the IJ have anything to terminate an asylum for anyone prior to 1997? I'm sorry, Your Honor, are you referring to the adjustment of status provision? For termination of asylum? Yes. Would they have any authority to terminate asylum? Not before April 1st, 1997, Your Honor. That provision of the Immigration and Nationality Act did not exist until a RIRA was passed on the effective date, which was April 1st, 1997. Someone fraudulently received an asylum prior to 1997, your position is the IJ has no authority to terminate that at all? That's correct, Your Honor. At least on this basis, on the basis of a criminal conviction. There was a pre-existing statutory section that allowed for the revocation of asylum status for changed country conditions, but just not on the basis of a conviction for a particularly serious crime. So your view is, in response to Judge Lee's question, that there is no, if you will, untethered right on the part of an IJ to terminate an asylum that does not have an express statutory authorization to do so, based on the specific facts of the case? That's correct, Your Honor. And I should note that I just passed the three-minute mark. Would you like me to continue answering questions? You can reserve your time, unless either of my colleagues has immediate questions that we need to ask. Well, can I just ask you to be ready to ask, to answer how 8 CFR 1208, 13 C2, and 24 A3 apply, because it's my understanding that that does allow them to end asylum by looking at a particularly serious crime. So I'd like you to answer that. Sure, sure. Would you like me to answer that now? No, you can reserve and take your time. I'll reserve, Your Honor. Very well. Okay, let's hear from the government, from Mr. O'Toole. Good morning, Your Honors. I apologize. I understand completely. If it may please the Court, Anita Natsumla on behalf of the government. Your Honors, I would just like to point out that Petitioner incorrectly keeps focusing on the fact that DHS may have invoked the aggravated felony ground as a ground for terminating, for reopening and terminating. But the immigration judge very specifically rejected that on the record at AR 980. In the final IJ decision, again at AR 87 and 88, that was rejected again. And the Board affirmed the IJ decision at AR 5 and specifically, explicitly stated that reopening was on the basis of the facts, circumstances of the case under matter of frontesco. As to Petitioner's argument, Your Honor, DHS complied with the regulations when it filed the motion to reopen and found that at all times, and the agency found that at all times relevant, whether it's 1989, 1993, or 2011, that Mr. Cano's conviction would have been a particularly serious crime. Petitioner, you know, keeps focusing on the fact that there's no specific citation to the INA. But if I may point, Your Honors, the authority, well, just to backtrack, firstly, in 1993, 8 U.S.C. 1158b specifically allows the Attorney General to terminate asylum based on two reasons. Two reasons. But the specific regulation that the agency used, 208.24, the authority for that is 8 U.S.C. 1103 and 8 U.S.C. 1158. And if I may, 1103 speaks to the powers and duties of the Attorney General. And it says very specifically, the Attorney General shall be charged with the administration and enforcement of this chapter and all other laws related to the immigration and naturalization of aliens. And it further goes on to say he shall establish such regulations, etc., etc., and perform such other acts as he deems necessary for carrying out his authority under the provisions of this chapter. That's 8 U.S.C. 1103, and that's the 1993 version. So from the government perspective, then, 8 U.S.C. 1103 is the statutory basis that underwrites the IJA's ability to terminate a previously granted asylum, is that correct? Yes, as well as 8 U.S.C. 1158 judgment. 1158, okay, all right. And I would also, to add to that, Your Honors, I would also point out that in 1996, with the passage of IRIRA, these regulations were codified. So that would seem indicative of congressional intent or, you know, to validate or, you know, approve of these pre-1996 regulations that existed. So in 1996, as Petitioner's Counsel points out, the ability to terminate asylum based on a particularly serious crime was codified. And there is a Ninth Circuit law, just the Ninth Circuit case, rather, Pachanko v. Holder, which very directly speaks to the termination of asylum by a petitioner who may have had a pre-1996 asylum grant and conviction, followed by a post-1996 termination of asylum and reapplication for relief based on a criminal conviction. Which was the case again, please, Counsel, our case? Pachanko v. Holder at 705 F. 3rd, 444. And that's a 2012 decision with a Russian petitioner. 705, you said? Yes, Your Honor, 705 F. 3rd, 444. Thank you. And very similar facts, the termination regulation there was the same, 204, albeit a different subsection, that was 204.24a. And in this case, the relevant section is 208.24g. But there, the Ninth Circuit denied the petition for review and held that, again, congressional intent was significant and that the agency's application of the termination regulation was valid. As Petitioner, as you pointed out, Judge Smith, there's no Ninth Circuit case law finding that these regulations are ultra-virus or invalid. Whether Petitioner, at the time of his conviction, the termination regulation existed. So there's no new legal disability or disadvantage that he can claim now. Because whether it was 1993 or 1989 or 1996, his conviction would have been a particularly serious crime that would have allowed the agency to terminate his asylum grant. As to the, if I may, Your Honor, Your Honor, Judge Smith had some questions as to the collateral estoppel issue. I could briefly address those unless Judge Cardone or Judge Lee have further questions on the termination of asylum. Go ahead and address the collateral estoppel, then, if you will. Yes, Your Honor. So at the outset, I would like to say, although Petitioner did, in fact, raise the issue in his notice of appeal to the agency, the board declined to address the issue. And so at the outset, I would ask the court if the court disagreed with the finding that it should go back to the agency for a specific analysis or consideration of that. But I don't think that's necessary, Your Honors, because collateral estoppel doesn't apply. This case is factually and legally distinct from Oyeniran, which Judge Smith is very familiar with, for three reasons. And the first reason is, unlike Mr. Oyeniran's case, where he was applying for cat deferral on both occasions, initially when he was granted cat deferral and then when the government reopened his case, in this case, Mr. Aldana Kanu is applying for completely different types of relief. He was initially applying for and was granted asylum, and then with reopening of his proceedings, he was applying for cat deferral. These two forms of relief and protection have two very different standards. For asylum, he would have had to show that he was a refugee who was unable or unwilling to return to his country based on five protected grounds. For cat deferral, he would have to show torture. He would have to show it was more likely not. For the second distinction, the Oyeniran court found or was very concerned with the fact that it literally was the same exact evidence that had been submitted on both occasions towards petitioner's claim. And so the court was concerned that how could an IJ grant an individual asylum based on certain facts where the petition was found credible, and then on reopening, find that those same facts and claim did not meet the burden. Here, it's very different. Not only are the facts different towards Mr. Aldana Kanu's cat deferral claim, in terms of, for instance, initially, the claim was fear of the guerrillas versus fear of the military. Initially, he testified that he returned to Guatemala in certain years and faced certain instances of harm versus when his case was reopened, there was a very different set of facts. But in Mr. Oyeniran's case, the agency found that he was credible in both instances. He was credible when they initially granted him relief, and he was credible when they reopened and denied his relief. This is very different. Here, although he may have been found credible for the grant of his asylum application in 1989, the agency here found that his claim was not credible based on the different set of facts that I had mentioned, Your Honor. And thirdly, collateral estoppel wouldn't apply also because in Mr. Aldana Kanu's case, the agency very specifically did an additional analysis that was notwithstanding the average credibility finding. And with that, they looked very specifically at other evidence in the record that was not available at the time of his 1989 claim. For instance, the agency looked at evidence that the Guatemalan Civil War had ended 30 years ago. They looked at extensive country background reports from the Department of State, from Amnesty International, from Human Rights Watch, from the United Nations High Commissioner for Refugees, documents that showed that Mr. Aldana Kanu, it was not more likely, it was more likely than not, he couldn't meet the burden to show that upon return to Guatemala with these new facts and this new evidence, that he would be tortured. And so, Your Honor, based on that argument, the government asked for the petition for review to be denied. And if there are no further questions. Do either of my colleagues have additional questions for counsel? No, thank you very much for your fine argument, counsel. So let's hear then for, again, counsel from the petitioner. Thank you, Your Honor. First of all, as to the regulatory question that Judge Cardone has asked, Judge Cardone, are you concerned about the current version of the regulations from the 1993 version of the regulations? It's my understanding that the IJ, the BIA, they applied the Frank Teskew factors and ignored the IR and followed the administrative regulations, which govern the termination of assignments. So I'm just not understanding, and that's all under HCFR 1208, so I'm not understanding how, what you're saying was incorrectly applied. Yes, Your Honor. So, Your Honor, in this case, when the government moved to reopen the asylum grant and moved to terminate it, the government had alleged that Mr. Aldonopoulos had an aggravated felony that justified termination of his asylum grant. I argued that the provisions governing, the statutory provisions governing termination of asylum status were impermissibly retroactive as applied to Mr. Aldonopoulos. The immigration judge in El Centro, in response to those arguments, actually rejected both parties' claims. He rejected the idea that a conviction for an aggravated felony automatically justified termination of asylum status, but he also rejected the idea that the statute was impermissibly retroactive as applied to Mr. Aldonopoulos, because he said that regulations at the time of the conviction justified authorized termination of asylum status, reopening and termination of asylum status, if the applicant committed a crime which would have been grounds for denial of asylum in the first instance. Your Honor, you had previously indicated that the regulation that you're just talking about now was applied ultra-virus. Yes. But you heard Counsel O'Connell point out that 8 U.S.C. 1103 and 1158 provide the statutory underpinning for those regulations. What's your response to that? Well, I respectfully disagree with Counsel's position on that matter. First of all, Section, I think it's 1103G1 of 8 U.S.C. says that, generally speaking, the federal immigration officials have the authority to promulgate regulations to apply and enforce provisions of the Immigration and Nationality Act passed by Congress. The problem here is that Congress did not pass a provision for the termination of asylum for a conviction purpose for a serious crime until 1996, and only by the language of that statute applied that provision to people who applied for asylum on or after April 1, 1997. So, you know, that statute presumes that Congress has already given the federal immigration officials the authority to promulgate regulations concerning that matter, and that authority did not exist. Second of all, with respect to Section 1158 generally, the asylum statute generally allows the Attorney General and his delegates by delegation to promulgate regulations governing the implementation of the asylum provision, specifically whether somebody qualifies for asylum in the first instance. Significantly, though, that language is absent from Section 208C2B of the Immigration and Nationality Act governing termination of asylum status. In other words, there's no language in that statute that says the Attorney General may, through regulations promulgated by the Attorney General and his delegates or the Department of Homeland Security, terminate a non-citizen's asylum status for a conviction purpose for a serious crime. Okay. Well, we thank you. Let me ask my colleague, you're out of time, but let me ask my colleague whether either has additional questions for Ms. Schoenberg. I do not. So, we thank both counsel for your very helpful arguments. We both did a very nice job. The case just argued is submitted. Thank you, Your Honor.
judges: M. Smith, Cardone, Lee